STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-254

KIM DOUCET, ET UX.

VERSUS

KEITH ALLEMAN, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20111110
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

AFFIRMED.

Carol S. Hunter
Assistant Attorney General
556 Jefferson St., 4th Floor
Lafayette, LA 70501
(337) 262-1700
COUNSEL FOR DEFENDANT/APPELLEE:
    Louisiana Department of Transportation & Development

Frank X. Neuner, Jr.
Jennie P. Pellegrin
NeunerPate
P.O. Box 52828
Lafayette, LA 70505-2828
(337) 237-7000
COUNSEL FOR DEFENDANT/APPELLEE:
    Louisiana Department of Public Safety & Corrections
    (Probation & Parole)

**Andrew Blanchfield**
**Keogh, Cox & Wilson, Ltd.**
**P. O. Box 1151**
**Baton Rouge, LA 70821**
**(225) 383-3796**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Continental Casualty Company**
    **Harley-Davidson Motor Company, Inc.**

**Ian A. Macdonald**
**Jones Walker**
**P. O. Box 3408**
**Lafayette, LA 70502-3408**
**(337) 593-7600**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Progressive Security Insurance Company**
    **Keith Alleman**

**Franklin J. Foil**
**Foil Law Firm**
**P. O. Box 4288**
**Baton Rouge, LA 70821-4288**
**(225) 382-3264**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Jerry Jones**

**Mark R. Pharr, III**
**Lindsay L. Meador**
**Galloway, Johnson, Tompkins, Burr & Smith, PLC**
**328 Settlers Trace Blvd.**
**Lafayette, LA 70508**
**(337) 735-1760**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Barrett Moving and Storage Company**

**Michael J. Remondet, Jr.**
**Juliette B. Wade**
**Jeansonne & Remondet**
**P.O. Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **National Casualty Company**
    **Cajun Cycles, Inc. d/b/a Cajun Harley Davidson**

**Scott A. Dartez**
**Warren A. Perrin**
**Perrin, Landry, deLaunay, Dartez & Ouellet**
**251 La Rue France**
**Lafayette, LA 70508**
**(337) 237-8500**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Gaston Doucet**
**Kim Doucet**

**Samuel B. Gabb**
**Joseph R. Pousson, Jr.**
**Plauche, Smith & Nieset, LLC**
**P.O. Drawer 1705**
**Lake Charles, LA 70601**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Secon, Inc.**

**Gerard J. Dragna**
**Eric Winder Sella**
**Perrier & Lacoste, LLC**
**365 Canal Street, Suite 2550**
**New Orleans, LA 70130**
**(504) 212-8820**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Suddath Relocation Systems of Minnestoa, LLC**

**Gregory A. Koury**
**Andrew P. Hill**
**Koury & Hill, LLC**
**P. O. Box 52025**
**Lafayette, LA 70505-2025**
**(337) 993-1842**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Kim Doucet**
**Gaston Doucet**

**Chaz H. Roberts**
**Bradley Aldrich**
**Attorney at Law**
**P. O. Box 53936**
**Lafayette, LA 70505**
**(337) 504-3202**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Kim Doucet**
**Gaston Doucet**

**GREMILLION, Judge.**

The widow and son of Ralph John Doucet appeal the trial court's grant of summary judgment in favor of the Louisiana Department of Public Safety and Corrections (LDPSC). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 2010, Doucet was participating in a motorcycle demonstration ride sponsored by Harley-Davidson Motorcycle Company and hosted by Cajun Harley, a locally-owned Harley dealership. The test drive began at the Cajun Harley showroom in Scott, Louisiana and proceeded for about eleven miles. The event involved ten to twelve motorcycle riders who were allowed to ride motorcycles as a means of test-driving them. Doucet was tragically killed when Keith Alleman (Alleman), who was headed southbound on Louisiana Highway 93 to visit his probation officer, veered off the road, overcorrected, and crashed into Doucet as he traveled northbound on Highway 93.[1]

Numerous parties were named as defendants; however, the defendants at issue in this appeal are the LDPSC. Plaintiffs claim that the LDPSC is liable to them because Alleman was on probation at the time of accident and had failed numerous drug tests in the months leading up to the accident. They argue that had his probation been revoked, he would not have been on the road to cause the accident.

The LDPSC filed a motion for summary judgment on September 25, 2014. A signed judgment in favor of the LDPSC was issued on November 6, 2014. The plaintiffs timely appealed.

---

[1] Alleman was serving two years' probation following his guilty plea in 2008 to possession of methamphetamine in violation of La.R.S. 40:967. Following this accident, Alleman was cited for driving while intoxicated in violation of La.R.S. 14:98, vehicular homicide in violation of La.R.S. 14:32.1, and careless operation in violation of La.R.S. 14:98.

The plaintiffs assert as error:

1. The trial court erred in granting LDPSC's motion for summary judgment based upon the qualified immunity provision found in LSA-R.S. 9:2798.1 because none of the probation officers' day-to-day duties that are at issue here qualify as either "policymaking" or "discretionary acts" within the meaning of that statute.

2. The trial court erred in granting LDPSC's motion for summary judgment based upon the qualified immunity for "discretionary acts" provision found in LSA-R.S. 9:2798.1 because that statute specifically excludes immunity for "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."

3. The trial court erred in granting LDPSC's motion for summary judgment because Plaintiffs presented sufficient evidence that LDPSC owed duties to Mr. Alleman, that it breached those duties, and that the breach of those duties was a direct and proximate cause of Mr. Doucet's death.

## DISCUSSION

### *Summary Judgment Law*

We use the de novo standard when reviewing a trial court's ruling on summary judgment. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment procedure is favored under Louisiana law. La.Code Civ.P. art. 966(A)(2).

> On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted.

2

*Bufkin v. Felipe's Louisiana,* LLC, 14-0288, p. __ (La. 10/15/14), __ So.3d __, __.

The duty-risk analysis applies to all negligence claims brought pursuant to La.Civ.Code art. 2315 to determine if a party is liable to another under the particular facts of the case.

> [A] plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Christy v. McCalla*, 11-0366, pp. 8-9 (La.12/6/11), 79 So.3d 293, 299. The threshold question is "whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Bufkin*, __ So.3d at __.

In his deposition, Alleman stated that because he is a motorcycle enthusiast, he was distracted by the motorcycle procession, which caused him to leave the road. He stated:

> Q. In your opinion, if the motorcycles weren't there would you have gone off the road?
>
> . . . .
>
> A. No, I wouldn't have.
>
> Q. Did the motorcycles distract you?
>
> A. Yes. Just because I'm a motorcyclist and I'm always looking.
>
> . . . .
>
> Q. When you are riding around, do you typically notice other people riding on motorcycles?
>
> A. Yes.
>
> Q. Is that because you are a motorcycle enthusiast?
>
> A. Yes.

3

. . . .

Q. You stated earlier that this accident occurred because you saw the motorcycles and they distracted you and you left the roadway; is that correct?

A. That's what I said.

Q. What was it about these motorcycles that distracted you such that you would have left the roadway in that curve that you had negotiated prior to this and were familiar with?

A. Nothing in particular. It's just what distracted me that took my eyes off the road for a little while.

Q. In the past before this accident when you had seen other groups of motorcycles traveling on roadways, why didn't they distract you like this group did?

A. Oh, they distracted me. I just didn't leave the roadway.

Q. Is it fair to say that whenever you're driving and see a motorcycle or group of motorcycles your eyes are drawn in that direction because you are a motorcycle enthusiast?

A. Yes.

Q. So it was not necessarily this group of motorcycles in particular, it was just motorcycles that distracted you?

A. Correct.

### *Duty/Risk*

We agree with the Plaintiffs that a probation officer has a duty to the public to perform their job so as to protect the public from foreseeable consequences. There is a very strong argument to be made that Georgiana Kibodeaux, Alleman's probation officer, should have taken further steps to inquire about the drug testing of Alleman since drug use was the very reason he was on probation. Nevertheless, Kibodeaux was not the legal cause of this accident. Even if she had been aware of the positive drug tests, it is impossible to know if Alleman's probation would have been revoked or if he would have been incarcerated.

4

The arguments of this case are similar to those in *McIntyre v. St. Tammany Parish Sherriff*, 02-700 (La.App. 1 Cir. 3/28/03), 844 So.2d 304, in which a probationer murdered his children. The first circuit found that the scope element of the duty-risk analysis could not be satisfied because the tragic death of the children was a "completely unforeseeable occurrence" on the part of the probation officer. *Id.* at 309. While there is merit to the general argument that it is foreseeable that drug users will endanger the motoring public anytime they operate a moving vehicle, Kibodeaux could not have foreseen that Alleman, a motorcycle enthusiast, would veer off the road because he became distracted by a motorcycle procession and overcorrected resulting in a head-on collision that killed Doucet. There was no evidence presented to show that Kibodeaux should have foreseen Alleman's actions that day. A probation officer's duty simply cannot be said to extend to this particular criminal act of Alleman.[2] The probation officer's duty has been succinctly reviewed in *McIntyre*:

> The duty of a probation officer to supervise the activities of a probationer does not include the obligation to take charge of or have custody of the probationer. Within the limits of the conditions of his probation, the probationer is free to come and go as he pleases, when and where he pleases. It is not the probation officer's duty to follow each probationer to prevent him from harming others. Probation officers are not the guarantors or insurers of the safety of each and every person probationers may come into contact with. The purpose of probation is to serve the public by rehabilitating convicted criminals and returning them to productive positions in society. Successful probation requires assisting a probationer in making his own decisions and allowing some freedom of action. Each person who chances to come into contact with a probationer bears the risk that the rehabilitative effort will fail.

*Id.* at 310. Moreover,

> A probation officer only has very limited control over a probationer who is free on probation. A probation officer who does

---

[2] Alleman agreed to a plea deal in which he plead guilty to vehicular homicide.

5

> not have the ability to control a probationer's activities or his whereabouts twenty-four hours a day should not have liability imposed for the unanticipated criminal acts of the probationer.

*Id*. at 310-11.

Additionally, there is no evidence that had Kibodeaux exercised her discretionary power to institute the revocation of Alleman's probation, that the trial court would have granted it or that Alleman would have been imprisoned after his arrest. *See* La.Code Crim.P. art. 899. It is within the trial court's discretion to issue a warrant for arrest and to revoke probation. *Id.*, *See also* La.Code Crim.P. art. 900. The trial court exercises its discretion to revoke probation even if there is proof that a violation has occurred. *State v. Duncan*, 396 So.2d 297 (La.1981). Even if he were imprisoned, Alleman may have posted bail. Plaintiffs emphasize the numerous failed drug tests of Alleman. However, it was undisputed that that the company who contracts with the LDPSC to perform the testing, SECON, failed to send any of the positive drug screen results to Kibodeaux. Although we agree that Kibodeaux had a duty to further inquire into the drug testing results of her probationer, it is mere speculation whether the prior arrest or notification to the trial court that Alleman had violated his probation would have prevented him from being distracted by the motorcycles and running off the road. Simply, Kibodeaux was not the legal cause of the accident that took Ralph Doucet's life.

### Qualified Immunity

Furthermore, even if we found that Kibodeaux had breached her duty to the motoring public, she would be exempt from liability due to qualified immunity according to the plain meaning of La.R.S. 9:2798.1. Louisiana Revised Statute 9:2798.1 provides for the qualified immunity of state actors as follows:

6

A.     As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

B.     Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C.     The provisions of Subsection B of this Section are not applicable:

(1)     To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2)     To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

Pursuant to La.Code Crim.P. art. 899(F), a probation officer is entitled to have "all the immunities and defenses now or hereafter made available to sheriffs, constables, and police officers in any suit brought against them in consequence of acts done in the course of their employment." The acts of a probation officer pertaining to the revocation of probation are discretionary. Plaintiffs presented no evidence to suggest that there was a statutorily mandated course of conduct that probation officers are mandated to follow. Kibodeaux and Alleman's former probation officer, Brad Poole, testified that it was at their discretion whether to begin probation revocation proceedings according to the facts of the particular case. Moreover, it is the trial court's function to determine if it will revoke probation.

Plaintiffs argue that no immunity is available for LDPSC because "LDPSC's failure to supervise Mr. Alleman was willful, outrageous, reckless and flagrant." They argue that LDPSC did not use its discretion because it took no action.

7

Plaintiffs cite several portions of Kibodeaux's deposition testimony that simply do not support this claim. Although we agree that Kibodeaux should have inquired into the drug testing, we do not find that her inaction rises to the level necessary to disregard her qualified immunity.

Accordingly, summary judgment was properly granted in favor of LDPSC because Kibodeaux was not the legal cause of the death of Ralph Doucet. Moreover, she is entitled to qualified immunity under La.R.S. 9:2798.1.

## CONCLUSION

The summary judgment granted in favor of the Louisiana Department of Public Safety and Corrections is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants, Kim Doucet, et ux.

**AFFIRMED**.